**In the Interest of C.L.B., A Child,**

**P.B., Father, Appellant.**

No. 94–953.

Court of Appeals of Iowa.

Jan. 23, 1995.

Rolf Aronsen, Mason City, for appellant.

Thomas J. Miller, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and Kathrine S. Miller–Todd, Asst. Atty. Gen., for appellee-State.

Susan Flander, Asst. Public Defender, Mason City, guardian ad litem, for minor child.

Considered by HAYDEN, P.J., and SACKETT and HUITINK, JJ.

HUITINK, Judge.

Paul appeals the juvenile court adjudicatory and dispositional orders determining his daughter, Chelsea, was a child in need of assistance (CINA). Because we find the evidence was not sufficient to support a CINA adjudication, we reverse.

Paul and Christine are the parents of Chelsea, born December 29, 1993. On January 5, 1994, Paul cared for Chelsea while Christine ran errands. He fed Chelsea a bottle warmed in a cup of water during this time. Shortly before Christine returned home, Paul noticed redness and blistering in a circular pattern on Chelsea's face. He

pointed this out to Christine immediately upon her return.

They consulted Paul's mother, a nurse, and called a physician who instructed them to bring Chelsea in to see Dr. Mock the next day. Upon examining Chelsea, Dr. Mock believed the redness was due to impetigo rather than a thermal injury. No cultures or blood tests were performed to aid in diagnosis. In addition, no injury was found on the inside of Chelsea's mouth. Dr. Mock referred Chelsea to Dr. Plank, a dermatologist.

Dr. Plank's initial impression was frostbite due to the extreme cold; however, Christine informed him Chelsea had not been outdoors. Given this information, Dr. Plank was unable to diagnose, with absolute certainty, whether the injury was a thermal burn or frostbite. The pattern of the injury led him to believe it was not impetigo. However, no cultures or Gram stains were performed that would eliminate impetigo as the cause of the redness and blistering.

After her initial consultation with Dr. Plank, Dr. Mock admitted Chelsea to the hospital so as to prevent infection. Due to the unexplained cause of the injury, Dr. Mock, as a mandatory reporter, was required to contact the department of human services. After investigating the matter the State filed a petition on January 19 alleging Chelsea was a child in need of assistance. The petition alleged Paul had burned Chelsea when he tried to feed her with a bottle that was too hot.

The department sought the opinion of Dr. Frasier, a pediatric associate with the University of Iowa Hospitals and Clinics. After reviewing records and photographs, Dr. Frasier concluded the marks were from a thermal burn with possible secondary impetigo. She opined that a flat, hot object was pressed against Chelsea's face, thus causing the redness and blistering.

After receiving Dr. Frasier's opinion and investigating the matter, the department concluded the Chelsea had been abused. A founded report of abuse was filed naming Paul as the perpetrator.

At the adjudicatory hearing Christine testified Chelsea had been outdoors during the period of the extreme cold temperatures. She testified she understood Dr. Plank's initial questioning to be whether Chelsea was outside for a prolonged period of time. She stated Chelsea had only been taken from the home to the car. Christine testified she bundled Chelsea properly and had covered her face with a blanket. Upon learning Chelsea had been taken outdoors with only a blanket draped over her face, Dr. Plank stated in a letter dated April 4, 1994, that he believed frostbite rather than heat was the cause.

The guardian ad litem took the position that Chelsea did not suffer from burns due to the heat of the bottle. He believed Chelsea had suffered from frostbite; however, she was not a child in need of assistance as a result of having suffered frostbite. He believed Chelsea was not in any danger of this reoccurring.

Despite the contradictory evidence and the position of the guardian ad litem, the juvenile court adjudicated Chelsea CINA pursuant to Iowa Code sections 232.2(6)(c)(2) and (6)(e) (1993). The court concluded the injury probably was nonaccidental, resulting from either abuse or neglect by her parents. The court later entered a dispositional order continuing Chelsea's status as CINA, keeping her in Christine's custody with Paul allowed supervised visitation.

In CINA proceedings, we review the evidence de novo. *In re B.B.*, 500 N.W.2d 9, 11 (Iowa 1993). Of paramount concern is the welfare and best interests of the child. *In re D.L.*, 401 N.W.2d 201, 202 (Iowa App.1986). We review the record to determine whether the finding of a child in need of assistance is supported by clear and convincing evidence. Iowa Code § 232.96(2) (1993). We give weight to the juvenile court's findings of fact, but we are not bound by them. Iowa R.App.P. 14(f)(7).

Paul contends the State failed to prove by clear and convincing evidence that Chelsea was a child in need of assistance. The State submits the evidence supports a finding that Chelsea was injured when a hot object, allegedly a bottle, was pressed against her skin.

In this case all of the medical and expert evidence was presented in the form of letters

of opinion, medical records, or depositions. None of the physicians testified at the hearing.

 The physicians who examined Chelsea, Dr. Mock and Dr. Plank, indicated the injury could have been from a burn, frostbite, or impetigo. However, neither one performed tests to eliminate impetigo as a cause. Dr. Mock opined the injury was more like a burn, while Dr. Plank believed it was frostbite. Only Dr. Frasier, who saw only Chelsea's records, stated that Chelsea was burned by a hot object and that someone abused her in the process.

Paul presented the opinion of another dermatologist, Dr. Cherney, who also reviewed Chelsea's records and photographs. Dr. Cherney opined this injury was not a burn, stating he was, "absolutely unable to make this diagnosis [burn due to heat] based on records and photographs alone within any reasonable degree of medical certainty." He further opined that the injury was "not inconsistent with windburn." Thus, the physicians who examined Chelsea as well as those physicians who reviewed her medical records failed to agree as to what caused the injury to Chelsea's face.

Other evidence was also insufficient to show Chelsea had been burned by a hot bottle. The parties stipulated it was impossible to heat the bottle to the point it could burn a child by using only running water. Although Paul denied warming the bottle in the microwave prior to feeding it to Chelsea, the abuse investigator conducted her own microwave tests on the bottle. To counter this theory Paul presented evidence of microwave testing done by a consulting firm. Those results showed no part of the bottle exceeded 102 degrees with the nipple and retainer ring never exceeding 90 degrees.

The State contends, regardless of which explanation was accurate (burn from a hot object, impetigo or frostbite), Chelsea suffered a severe injury as a result of the abuse or neglect of her parents. We strongly disagree. We do not accept the argument that because the child suffered an injury, one or both of her parents must have abused or neglected her, therefore the child must be a child in need of assistance. *See In re Driver,*

311 N.W.2d 87, 89–90 (Iowa 1981). Here, the State must still prove by clear and convincing evidence that Chelsea suffers or will suffer the type of harm contemplated in sections 232.2(6)(c)(2) or (6)(e).

The contradictory evidence provided by the physicians and the testing is insufficient to support a finding that Chelsea was burned by a hot bottle pressed against her face. Whether or not the injury was the result of impetigo or frostbite, the record shows Paul and Christine exercised reasonable care in supervising Chelsea and provided her with proper medical care. The record shows their care for their daughter was reasonable prior to the time the injury was discovered. Upon discovering her condition, they immediately sought medical treatment for Chelsea.

From our de novo review of the record, we conclude the State has failed to prove by clear and convincing evidence that Chelsea was a child in need of assistance under either section 232.2(6)(c)(2) or 232.2(6)(e). The evidence does not support the juvenile court's conclusion that one or both parents abused or neglected Chelsea. Accordingly, we reverse the decision of the juvenile court adjudicating Chelsea a child in need of assistance and remand for dismissal of the State's petition. Costs of this appeal are assessed to the State.

**REVERSED AND REMANDED WITH DIRECTIONS.**